**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

<table>
<tr>
<td>PATRICK R. MULDROW,<br><br>Petitioner,<br><br>v.<br><br>THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al.,<br><br>Respondents.</td>
<td>Civil Action No. 21-19898 (GC)<br><br>OPINION</td>
</tr>
</table>

**CASTNER, District Judge**

**THIS MATTER** is before the Court on a *pro se* petition for a writ of habeas corpus (Petition) pursuant to 28 U.S.C. § 2254 (§ 2254) filed by Petitioner Patrick Muldrow, a convicted and sentenced state prisoner incarcerated at East Jersey State Prison in Rahway, New Jersey. (ECF No. 1.) Petitioner filed a memorandum of law in support of his Petition (ECF No. 1-2), Respondents answered the Petition (ECF No. 7), and Petitioner filed a letter reply (ECF No. 19). The Court further ordered Respondents to file a supplemental response addressing Ground Two in the Petition (ECF No. 20), which has been filed (ECF No. 25). Additionally, Petitioner filed a letter, which the Court construes as a motion to amend his Petition (Motion to Amend). (ECF No. 24.) The Court has carefully considered the parties' submissions. For the reasons set forth below, and other good cause shown, the Petition and Motion to Amend are **DENIED**, and a certificate of appealability shall not issue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner challenges his convictions on several drug and weapons charges arising out the contraband found at his "stash house" on Clearstream Road in Jackson, New Jersey ("Clearstream"). Search warrants were issued on January 15, 2008 for the Clearstream property, and a property located on Martin Luther King Drive in Lakewood, New Jersey ("MLK"). *See State v. Muldrow*, No. A-0860-10T2, 2013 WL 1296287, at *2 (N.J. Super. Ct. App. Div. Apr. 2, 2013) (per curiam). To obtain the warrants, Investigator David Fox of the Ocean County Prosecutor's Office submitted an affidavit dated January 15, 2008. *See id.* In its decision affirming Petitioner's convictions on direct appeal, the New Jersey Superior Court, Appellate Division summarized the investigator's supporting affidavit:

> Fox, who was assigned to the Special Operations Group (SOG) of the prosecutor's office, detailed his years of training and experience in narcotics investigations. During the week of December 9, 2007, Fox met with "a reliable confidential informant" (CI) who provided him with information that an individual known as "Pat Mo" was distributing narcotics and guns. The CI provided a description of Pat Mo and his cell phone number, and said he could purchase cocaine from Pat Mo. Fox contacted Sergeant James Van de Zilver of the Lakewood Police Department. Van de Zilver was "familiar" with defendant and confirmed that he fit the CI's description and resided at the MLK property.
>
> Fox, Van de Zilver and the CI met. The CI directed the officers to the Clearstream property and claimed that he had purchased drugs from Pat Mo at that location in the past. The CI said Pat Mo stayed there occasionally, but mainly used it as a "stash residence" for CDS and weapons. From a driver's license photo, the CI identified Patrick as being Pat Mo. Fox confirmed with the Motor Vehicles Commission that Patrick resided at the MLK property, and he checked Patrick's criminal history, which revealed seven prior arrests in New Jersey, including possession and distribution of marijuana and cocaine, and a felony arrest in New York for possession of narcotics with intent to distribute. Fox checked utility subscriber information for the Clearstream property. The utilities were in Robin's name, but Patrick was listed as the customer contact.

Surveillance of the Clearstream property began on December 21, 2007. Six days later, a surveillance team observed a pick-up truck drive into the driveway. Patrick was the passenger. The officers observed him exit the truck, walk around the property with a flashlight and remove a license plate from a car parked near the house and put it on another car, a tan Toyota Camry. Patrick placed a long, rectangular object in the trunk of the Camry before driving away. The next day, the surveillance team saw Patrick park the Camry in the driveway of the Clearstream property, exit with a cardboard box, enter the back door of the residence, return to the car, re-enter the residence and then drive away.

During the week of December 31, 2007, the CI contacted Fox and said he had spoken to Pat Mo, who was in possession of cocaine and ready to sell some. The officers arranged for a controlled buy, and surveillance units were sent to the Clearstream and MLK properties. At the Clearstream property, officers observed Patrick drive into the driveway, enter "a camper trailer" at the rear of the property, exit about twenty seconds later, enter the house and exit moments later. Patrick then drove away. The car he used, a "dark colored, four door sedan," was registered to Patrick at the MLK property.

In the presence of some of the officers, the CI called Patrick. Fox listened to the conversation and heard Pat Mo tell the CI to meet him at the MLK property to consummate the sale. Mobile surveillance teams followed Patrick, who drove directly from the Clearstream property to the MLK property.

Officers monitored the CI as he traveled to the MLK property with marked funds, exited his car, entered Patrick's car, re-entered his own car a short time later and drove away. The CI met with the officers at a pre-arranged location and gave them the white powdery substance he purchased from Patrick, which later tested positive for cocaine.

The CI informed Fox that Patrick hid guns in his vehicle and was going to Georgia in the next few weeks to purchase a large number of guns. He also reported that Patrick hid "stuff," meaning cocaine, in abandoned vehicles and buried drugs in the backyards of the two properties. During the week of January 11, 2008, the CI again contacted Patrick by cell phone. During their conversation, which Fox overheard, Patrick told the CI that he "was going to Georgia in the next couple days and that he would also have 'the other stuff' (meaning cocaine for sale)."

*Id.* at *2-4.

The Clearstream property search warrant was executed on January 22, 2008, and the officers seized drugs and other evidence. *See id.* at *4. Another warrant was issued to search a camper and two cars parked in the backyard, and the search of the camper resulted in the seizure of weapons and additional drugs. *See id.*

In April 2008, Petitioner was indicted on multiple drug and weapons charges. *See State v. Muldrow*, No. A-1879-18, 2021 WL 806938, at *2 (N.J. Super. Ct. App. Div. Mar. 3, 2021) (per curiam). The charges included: third-degree possession of cocaine, N.J. Stat. Ann. § 2C:35-10(a)(1) (count one); first-degree possession of cocaine in an amount of more than five ounces with the intent to distribute, *id.* §§ 2C:35-5(a)(1) and 2C:35-5(b)(1) (count two); fourth-degree possession of more than fifty grams of marijuana, *id.* § 2C:35-10(a)(3) (count three); third-degree possession of between one ounce and five pounds of marijuana with the intent to distribute, *id.* §§ 2C-35-5(a)(1) and 2C:35-5(b)(11) (count four); second-degree possession of a knife while engaged in drug activity, *id.* § 2C:39-4.1(c) (count five); eight counts of second-degree possession of a firearm while engaged in drug activity, *id.* § 2C:39-4.1(a) (counts six through thirteen); fourth-degree possession of a knife by a convicted person, *id.* § 2C:39-7(a) (count fourteen); and eight counts of second-degree possession of a firearm by a convicted person, *id.* 2C:39-7(b) (counts fifteen through twenty-two). *See Muldrow*, 2021 WL 806938, at *2.

Petitioner filed a counseled motion to suppress the evidence obtained in the search of the Clearstream property, and his motion was heard at a pretrial hearing by Judge Wendell Daniels. *See Muldrow*, 2013 WL 1296287, at *4. Judge Daniels concluded that, considering the totality of the circumstances, probable cause supported the search warrant. *See Id.*

Subsequently, Petitioner expressed dissatisfaction with his counsel, and, at a pretrial

conference, indicated that he wished to represent himself. Petitioner also unsuccessfully sought new counsel and refused to attend his trial:

> To place Patrick's claims in the proper context, we provide some additional procedural history, noting first that defendant remained in custody, having not made bail, and apparently was present in a jail detention area in the courthouse building.
>
> At a pretrial conference on June 26, 2009, the trial judge [who was not Judge Daniels] issued Hudson[4] [Footnote 4: *State v. Hudson*, 119 *N.J.* 164, 182 (1990)] warnings, advising both defendants of the trial date and that the case would proceed in their absence. During the course of the hearing, Patrick told the judge that he wanted "to go pro se" because of complaints regarding defense counsel's performance. The judge gave Patrick until September 1 to submit a written request to proceed pro se.
>
> The court received Patrick's pro se motion for "counsel withdrawal and reassignment" dated August 31, 2009. In the accompanying memorandum, Patrick did not ask to represent himself but, rather, sought the assignment of another lawyer. In a letter dated October 1, 2009, the judge advised Patrick that his complaints and request to have another "pool attorney" assigned had to be addressed to the Office of the Public Defender.
>
> At a pretrial conference on January 12, 2010, the judge again reviewed his reasons for denying Patrick's motion. Patrick voiced myriad complaints about defense counsel, including that he had not seen his attorney in months. Defense counsel denied the claim by reading into the record relevant timesheets documenting his meetings with Patrick.
>
> Patrick also indicated that his attorney was afraid of him. In response, the judge asked the prosecutor to place on the record several comments, which might be inferred as threats, Patrick had made in court, apparently outside the judge's presence and off the record. The judge also noted that Patrick sent a letter, dated January 7, 2010, again expressing dissatisfaction with his attorney and requesting other counsel.
>
> Patrick's obstreperous behavior continued the next day, during which he complained about counsel's refusal to argue a motion he submitted. The judge reminded Patrick that counsel would continue to represent him, and he would be guided by counsel's decisions. The following occurred:

> Patrick: Well, Your Honor, then I can leave now and you can finish the trial without me. My attorney tells me he is going to put a defense in and I have no say in it? . . . You telling me that I have no right to pick my defense?
>
> . . . .
>
> Therefore, as soon as we leave here, I am letting you know and this is on the record, I am not coming down here no more.
>
> Like I said before, and I put it on the record yesterday, I am putting in for appeal to have the notice that I am appealing this. I am not coming down here no more.

Patrick then accused defense counsel of "feel[ing] threatened." Defense counsel responded, "[F]or the record, I don't feel threatened by [defendant]." Patrick continued:

> I am not coming back down here tomorrow, so don't even call for me and that is on the record. I refuse trial because I am not getting a fair trial so have it without me.

On January 26, the judge asked defense counsel if he wished to place something on the record. Defense counsel stated, "I visited my client . . . this morning. I advised him that he had a right to be here at trial, that he could be here at trial at any time and he declined to come to trial." The judge asked, "So he's refusing to come down for trial?" Defense counsel responded, "Yes. . . ."

On February 4, the next date for which we have been supplied [the] transcript, defense counsel advised the judge that he "went up to see [his] client, [and] he refused to come down." The judge then noted that he confirmed this by speaking to a sheriff's officer who "firsthand informed me that [Patrick] told her that he did not want to come down."

The trial commenced, and, during his preliminary instructions, the judge told the jury:

> I will remind you again, as you are aware, that the defendant . . . is absent from this trial. You should not speculate about the reason for his absence. You are not to consider for any purpose or in any manner at arriving at your verdict the fact that Patrick . . . is not present at trial. The defendant is

> entitled to have the jury consider all evidence presented at trial, the defendant is presumed innocent even if he is not present at trial.
>
> On the next trial day, February 9, the judge began by stating outside the jury's presence: "I just want to confirm that I spoke to Officer Levers upstairs at the Ocean County Jail, he's in the tower, he confirmed that . . . Patrick . . . this morning told him . . . he is refusing to come down to court." On the next trial day, February 16, defense counsel again confirmed that Patrick was "refusing to come down this morning," and the judge noted he independently confirmed that by contacting one of the sheriff's officers at the jail. During his final jury charge, delivered on February 17, the judge again admonished the jury not to consider Patrick's absence during trial.

*Id.* at *8-10 (select footnotes omitted).[1]

The jury found Petitioner guilty on counts one through thirteen. *See id.* at *8. Petitioner was then tried on the remaining weapons counts and found guilty. *See id.* The trial court sentenced Petitioner to an aggregate term of forty years of incarceration with a twenty-year period of parole ineligibility. *See id.* at *1.

Petitioner appealed. *See id.* Petitioner argued, *inter alia*, that the trial court: (1) erred by denying his motion to suppress because there was no probable cause to believe that contraband would be found at the Clearstream property; (2) violated his right to self-representation when it failed to conduct a hearing after Petitioner requested to proceed *pro se*; and (3) erred by failing to ascertain from Petitioner whether he wanted to absent himself from the trial and relying instead on third-party representations. *See id.*

On April 2, 2013, the Appellate Division affirmed Petitioner's conviction. *Id.* at *1-13. The Appellate Division specifically determined that the probable cause claim was without sufficient merit to warrant extensive discussion given the "surveillances" connecting Petitioner to

---

[1] The Appellate Division referred to Petitioner by his first name because he was being tried with his sister, Robin Muldrow. *Muldrow*, 2013 WL 1296287, at *1 n.1.

the Clearstream property and the camper and the fact that the CI provided information that was independently corroborated by a controlled purchase occurring immediately after Petitioner had visited the property. *Id.* at *5. The Appellate Division disagreed with Petitioner's assertion that the trial court erred by not conducting a hearing on his request to proceed *pro se*, concluding that he failed to make "an unequivocal request" to represent himself because, although he made a request to proceed *pro se* at a pre-trial conference, his follow-up motion sought only appointment of new counsel and he never again asked to represent himself at any proceeding. *Id.* at *10-11. Finally, according to the Appellate Division, the claim, raised for the first time on appeal, that the trial court erred in trying him *in absentia*, was procedurally barred because he failed to raise this issue in a pre-sentencing motion for a new trial. *Id.* at *11. The Appellate Division further determined that the argument failed on its merits because Petitioner repeatedly told the trial court he did not wish to attend the trial and the trial court confirmed with members of the sheriff's staff and defense counsel that his "wish continued." *Id.*

The New Jersey Supreme Court denied Petitioner's petition for certification on October 9, 2013. *State v. Muldrow*, 216 N.J. 8 (2013) (unpublished table decision).

Petitioner filed petitions for post-conviction relief ("PCR") on December 10, 2013, January 13, 2014, and July 15, 2014, which were dismissed without appointment of counsel. *See Muldrow*, 2021 WL 806938, at *3. The Appellate Division subsequently granted Petitioner's motion for summary disposition and reversed and remanded the orders denying appointment of counsel. *See id.* Petitioner claimed, *inter alia,* that trial counsel provided ineffective assistance by not filing an application under *Franks v. Delaware*, 438 U.S. 154 (1978), and that the affidavit in support of the search warrant lacked probable cause. *See Muldrow*, 2021 WL 806938, at *3. "PCR counsel noted that on October 24, 2008, Angelo Pawlowski, who alleged he was the CI, provided an

affidavit to Fox that the information he gave to Fox and the other police during the week of December 31, 2007 was false." *Id.* (further noting that Petitioner claimed he told his counsel to file a *Franks* application). The PCR court found that the claims were procedurally barred because they were raised on direct appeal. *See id.* at *4. Specifically, "Defendant alleged ineffective assistance of counsel for not challenging the search warrants for the Clearstream property, but trial counsel did in fact challenge the search warrants in the motion to suppress and then again in the direct appeal [and the Appellate Division determined there was probable cause for the warrants]." *Id.* The PCR court rejected the *Franks* ineffectiveness claim for several reasons (*i.e.*, Petitioner never certified that his attorney was aware of the affidavit, he did not establish that Pawlowski was the CI, he was not charged with any offense related to the controlled buy by the CI, Petitioner did not allege that Fox was aware of the alleged falsity when he signed the affidavit, and probable cause was independently established by the police). *See id.* The PCR court also independently reviewed the search warrants and accompanying affidavit and found there was probable cause. *See id.* In addition, the PCR court denied an evidentiary hearing on the grounds that Petitioner did not establish a *prima facie* case of ineffective assistance of counsel. *See id.*

Petitioner appealed, and the Appellate Division affirmed the orders denying his PCR petitions on March 3, 2021. *Id.* at *1-6. According to Petitioner, the PCR court erred by finding that his claims were procedurally barred. *Id.* at *5. Petitioner further contended that his trial and PCR counsel were ineffective because they failed to request a *Franks* hearing based on the Pawlowski affidavit. *Id.* (noting that the affiant claimed he was the CI and that the information he provided was false and that Petitioner alleged the false information was material in obtaining the search warrant). The Appellate Division rejected Petitioner's contention that trial counsel was ineffective for not challenging the search warrant on the grounds that counsel did challenge the

warrant and, as the Appellate Division held on direct appeal, the search warrant was issued based on probable cause. *Id.* With respect to the *Franks* ineffectiveness claim, the Appellate Division agreed with the PCR court that "defendant's proofs did not satisfy the standards necessary for post-conviction review." *Id.* at *6.

On June 21, 2021, the New Jersey Supreme Court denied review.[2] *State v. Muldrow*, 246 N.J. 583 (2021) (unpublished table decision).

On or about November 8, 2021,[3] Petitioner filed his federal habeas petition (ECF No. 1) and a supporting memorandum of law (ECF No. 1-2). Petitioner raises four claims or grounds for relief (recited herein verbatim):

> **GROUND ONE** THE TRIAL JUDGE ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE AS THERE WAS NO PROBABLE CAUSE TO BELIEVE THAT CONTRABAND WOULD BE FOUND AT THE PROPERTY LOCATED ON CLEARSTREAM ROAD.
>
> **GROUND TWO** THE JUDGE VIOLATED DEFENDANT'S RIGHT TO SELF-REPRESENTATION WHEN HE FAILED TO CONDUCT A HEARING AFTER THE DEFENDANT REQUESTED TO PROCEED PRO SE.
>
> **GROUND THREE** THE TRIAL COURT ERRED BY NOT ASCERTAINING PERSONALLY WHETHER DEFENDANT WANTED TO ABSENT HIMSELF FROM THE TRIAL, RELYING INSTEAD ON THIRD-PARTY REPRESENTATION, IN VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHTS.

---

[2] The Court further notes that, on September 19, 2019, Petitioner filed another PCR petition. *See State v. Muldrow*, No. A-0333-22, 2024 WL 4562841, at *2 (N.J. Super. Ct. App. Div. Oct. 24, 2024) (per curiam). The petition was denied, the Appellate Division affirmed the denial, and, on February 14, 2025, the New Jersey Supreme Court denied certification. *See id.* at *2-3; *State v. Muldrow*, 260 N.J. 93 (2025) (unpublished table decision).

[3] *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (holding that a *pro se* prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court).

> **GROUND FOUR** TRIAL COUNSEL WAS INEFFECTIVE FOR NOT SEEKING A FRANKS HEARING PRIOR TO TRIAL.

(ECF No. 1-2 at 15, 21, 30, 33 (emphasis omitted).)

On March 17, 2022, Respondents answered the Petition.[4] (ECF No. 7.) Petitioner submitted a letter dated April 24, 2022 in further support of his petition. (ECF No. 19.)

On November 27, 2024, the Court ordered Respondents to file a supplemental response to Ground Two. (ECF No. 20 at 1.) The Court specifically directed Respondents to:

> 1. respond to Petitioner's argument that the New Jersey Appellate Division unreasonably applied clearly established federal law as determined by the United States Supreme Court because, by acknowledging that Petitioner requested to proceed pro se but concluding that he did not unequivocally request to proceed pro se because his follow-up motion sought only dismissal of his public defender and appointment of new counsel and he never again asked to represent himself, the New Jersey Appellate Division "ignored the fact that 'a defendant need not recite some talismanic formula hoping to open the eyes and ears of the court to his request' to invoke his/her Sixth Amendment rights under *Faretta*." (ECF No. 1-2 at 29-30 (quoting *Buhl v. Cooksey*, 233 F.3d 783 (3d Cir. 2000)).)
>
> 2. address *Buhl*, *Barney v. Administrator of New Jersey State Prisons*, 48 F.4th 162 (3d Cir. 2022), *United States v. Robinson*, 844 F.3d 137 (3d Cir. 2016), and *Brathwaite v. Phelps*, 418 F. App'x 142 (3d Cir. 2011); and
>
> 3, address the issue of waiver and its possible relevance to Petitioner's Ground Two, see *Brathwaite*, 418 F. App'x at 146-48; *Buhl*, 233 F.3d at 800-03[.]

(ECF No. 20 at 1-2.) Respondents filed their supplemental response on February 13, 2025.[5] (ECF No. 25.)

In a letter dated January 26, 2025, Petitioner apparently requests leave to raise another

---

[4] On April 11, 2022, this matter was reassigned to the Undersigned. (ECF No. 18.)

[5] The Court also granted Petitioner leave to file a reply to the supplemental response and invited him to file a motion for appointment of counsel. (ECF No. 20 at 2.) Petitioner did not file either a reply or a motion for appointment of counsel.

ground or claim for relief, *i.e.*, the alleged imposition of a mandatory extended term as a persistent offender under N.J. Stat. Ann. § 2C:44-3a violated the United States Supreme Court's holding in *Erlinger v. United States*, 602 U.S. 821 (2024), that, under the Fifth and Sixth Amendments, a jury (and not the sentencing judge) must decide whether prior convictions used as the basis for enhanced sentencing were committed on separate occasions. (ECF No. 24 at 1-3.)

## II. LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner petitioned for a writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). To obtain relief under the "contrary to" clause of §

2254(d)(1), a petitioner must show that the state court applied a rule different from the governing law of the United States Supreme Court or decided a case differently than the United States Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal habeas court making an "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Furthermore, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted). A petitioner carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment

rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (quoting *Coleman v. Thompson*, 501 U.S. 722, 740 (1991)); *Rambo v. Adm'r E. Jersey State Prison*, 762 F. App'x 105, 107 (3d Cir. 2019) (noting the applicability of *Ylst*'s "look through" doctrine).

*Pro se* submissions must be liberally construed in favor of the *pro se* litigant. *See Nwokedi v. United States*, No. 19-0263, 2025 WL 2476465, at *8 (D.N.J. Aug. 28, 2025).

## III. DISCUSSION

### A. Ground One: Probable Cause for the Clearstream Property Search Warrant

In Ground One, Petitioner argues that there was no probable cause to believe that contraband would be found at the Clearstream property. (ECF No. 1-2 at 15.)

Upholding the trial court's denial of Petitioner's suppression motion on direct appeal, the Appellate Division explained the relevant legal standards for analyzing a challenge to a search executed pursuant to a warrant:

> "It is well settled that a search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" *State v. Jones,* 179 *N.J.* 377, 388 (2004) (quoting *State v. Valencia,* 93 *N.J.* 126, 133 (1983)). "In considering such a challenge, [w]e accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant." *Ibid.* (internal quotation marks and citations omitted) (alteration in original). Any doubt as to the adequacy of the facts offered to show probable cause should be resolved by sustaining the search. *Id.* at 388–89.
>
> Before issuing a search warrant, the judge "must be satisfied that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched." *State v. Sullivan,* 169 *N.J.* 204, 210 (2001). "Probable cause . . . is 'a "well grounded" suspicion that a crime has been or is being committed.'" *Id.* at 211 (quoting *State v. Waltz,* 61 *N.J.* 83, 87 (1972)). "When

> determining whether probable cause exists, courts consider the totality of the circumstances, and . . . deal with probabilities." *Jones, supra,* 179 *N.J.* at 389 (quoting *Schneider v. Simonini,* 163 *N.J.* 336, 361 (2000), *cert. denied,* 531 *U.S.* 1146, 121 *S.Ct.* 1083, 148 *L. Ed.*2d 959 (2001)).
>
> "Information related by informants may constitute a basis for probable cause, provided that a substantial basis for crediting that information is presented." *Ibid.* (citation omitted). "'Independent corroboration is necessary to ratify the informant's veracity and validate the truthfulness of the tip' and is considered 'an essential part of the determination of probable cause.'" *Id.* at 390 (quoting *State v. Smith,* 155 *N.J.* 83, 95, *cert. denied,* 525 *U.S.* 1033, 119 *S.Ct.* 576, 142 *L. Ed* .2d 480 (1998)). Corroborating factors "may include controlled drug purchases performed on the basis of the informant's tip, [and] positive test results of narcotics obtained during a controlled purchase. . . ." *Ibid.*

*Muldrow*, 2013 WL 1296287, at *4-5. The Appellate Division then concluded that any claim that the Clearstream warrant he lacked probable cause was meritless:

> Here, any claim that the warrant for the Clearstream property lacked probable cause is without sufficient merit to warrant extensive discussion. *R.* 2:11–3(e)(2). The surveillances connected Patrick to the Clearstream property and the camper. The CI provided information that was independently corroborated by a controlled purchase, which occurred immediately after Patrick visited the Clearstream property and drove directly to the site of the sale. Based upon the totality of the circumstances, there was sufficient probable cause to believe that there was evidence of a crime at the Clearstream property.

*Id.* at *5.

Petitioner argues that insufficient probable cause was presented for the search of the Clearstream home and camper because the police saw no illegal or even suspicious activity during their surveillance of the property. (ECF No. 1 -2 at 21.) He further contends that, apart from the CI's unsubstantiated claim that he had bought drugs at the property sometime in the past, the CI provided no information about the property and that there was no evidence in the affidavit showing that Petitioner lived at the Clearstream property. (*Id.*) Purportedly, "[a]ll the police learned was

that [Petitioner] had access to the house and camper and once or twice, during their investigation, briefly stopped by the house." (*Id.*)

"[I]n *Stone v. Powell*, 428 U.S. 465 [ ] (1976), the Court removed from the purview of federal habeas court challenges resting on the Fourth Amendment, where there has been a full and fair opportunity to raise them in the state court." *Biddle v. D'Ilio*, No. 15-2058, 2024 WL 1173718, at *15 (D.N.J. Mar. 19, 2024) (alteration in original) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 79-80 (1977)), *certif. of appealability denied by sub nom. Biddle v. N.J. State Prison Adm'r*, No. 24-1661, 2024 WL 6080510 (3d Cir. Oct. 18, 2024). Petitioner does not assert that he was denied a full and fair opportunity to raise his Fourth Amendment challenge in the state courts. In fact, Petitioner filed a motion to suppress, the state trial court denied his motion, the denial was upheld on direct appeal before the Appellate Division, and the state supreme court denied review. *See Muldrow*, 2013 WL 1296287, at *2-5, *certif denied*, 216 N.J. 8. Accordingly, Petitioner's Fourth Amendment claim is barred by *Powell*.

Alternatively, even if Ground One were not barred under *Powell* (and, for the reasons stated above, it is barred), the Court concludes that the Appellate Division's decision was neither contrary to, nor an unreasonable application of, clearly established federal law, nor did it involve an unreasonable application of the facts.

To obtain relief under the "contrary to" clause of 28 U.S.C. § 2254(d)(1), a Petitioner must show that the state court applied a rule different from the governing law of the United States Supreme Court, or if it decides a case differently than the United States Supreme Court on a set of materially indistinguishable facts. *See Bell*, 535 U.S. at 694. Petitioner has done neither in this case. On the contrary, the Appellate Division applied the proper standards established by the United States Supreme Court for reviewing claims that probable cause failed to support the

issuance of a search warrant, recognizing that "[w]hen determining whether probable cause exists, courts consider the totality of the circumstances, and . . . deal with probabilities." *Muldrow*, 2013 WL 1296287, at *5 (quoting *Jones*, 179 N.J. at 389). The Appellate Division used the Supreme Court's practical "totality of the circumstances" approach to probable cause determinations. *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983) (adopting practical "totality of the circumstances" approach to probable cause based on non-technical "probabilities"). The Appellate Division further explained that, although information conveyed by informants may constitute a basis for probable cause, "corroboration is necessary to ratify the informant's veracity and validate the truthfulness of the tip." *Muldrow*, 2013 WL 1296287, at *5 (quoting *Jones*, 179 N.J. at 390); *see also Gates*, 462 U.S. at 244-45 ("In addition, the magistrate could rely on the anonymous letter, which had been corroborated in major part by Mader's efforts—just as had occurred in *Draper.*" (footnote omitted)).

Furthermore, the Appellate Division's decision was neither an unreasonable application of *Gates,* nor did it involve an unreasonable factual determination. The Appellate Division reasonably observed that the police surveillance connected Petitioner to the Clearstream property and the CI provided information that was independently corroborated by a controlled purchase, which occurred immediately after Petitioner visited the property. *Muldrow*, 2013 WL 1296287, at *5. With respect to Petitioner's connections with the property, Petitioner acknowledges that he was observed by police on December 27, 2007 arriving at the Clearstream property as a passenger in a pickup truck and that he then walked around the property with a flashlight, removed license plates from another car and placed them on a Toyota Camry, removed a rectangular object (approximately two to three feet in length) from the trunk of the Toyota, and drove off in the Camry while the other individual left in the pickup truck. (ECF No. 1-2 at 16; *see also* ECF No. 11 at

26a-27a (Aff.).) On the next day, "[o]fficers observed a white Camry pull into the driveway of the Clearstream home," Petitioner exited the vehicle carrying a large cardboard box, entered the house through the back door, exited the house and re-entered the Camry, went into the house again turning off the light, returned to the car, and drove away. (ECF No. 1-2 at 16; *see also* ECF No. 11 at 27a-28a.) Additionally, Petitioner admits that, after the CI told the police that Petitioner was willing to sell him cocaine, Petitioner was observed pulling into the Clearstream property driveway, entering a trailer for about twenty minutes, and driving away. (ECF No. 1-2 at 16-17; *see also* ECF No. 11 at 28a-29a.) "Mobile surveillance teams followed Patrick, who drove directly from the Clearstream property to the MLK property," where the drug transaction took place. *Muldrow*, 2013 WL 1296287, at *3; (*see also* ECF 11 at 29a-30a (averring that Petitioner's vehicle was under constant surveillance as he drove directly from the Clearstream to the MLK property).)

"[A] federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. It was not objectively unreasonable for the Appellate Division to decide that the totality of the circumstances, including Petitioner's prior visits and activities at the property and the circumstances linking the drug transaction with the property, provided probable cause to believe there was evidence of a crime at the Clearstream property.[6]

Accordingly, the Court denies Ground One.

---

[6] To the extent that Petitioner challenges the sufficiency of the CI's "unsubstantiated claim that he had sometime in the past bought drugs there" (ECF No. 1-2 at 21), the Appellate Division did not rely on this averment in its probable cause assessment. Likewise, it did not rely on any supposed implication that the CI had provided reliable information in past investigations. (*See id.* at 20-21.)

**B. Ground Two: Right to Self-Representation**

In his second ground, Petitioner asserts that "the judge violated Defendant's right to self-representation when he failed to conduct a hearing after the defendant requested to proceed pro se." (ECF No. 1-2 at 21 (emphasis omitted).) On direct appeal, the Appellate Division analyzed and denied this claim as follows:

> A "[d]efendant possesses both the right to counsel and the right to proceed to trial without counsel." *State v. DuBois,* 189 *N.J.* 454, 465 (2007). In *State v. Crisafi,* 128 *N.J.* 499, 509 (1992), the Court explained that a defendant may "exercise the right to self-representation only by first knowingly and intelligently waiving the right to counsel." "The need for an *unequivocal* request for self-representation by a defendant is a necessary prerequisite to the determination that the defendant is making a knowing and intelligent waiver of the right to counsel." *State v. Figueroa,* 186 *N.J.* 589, 593 n. 1 (2006) (emphasis added).
>
> "Of course, there is a difference, constitution-wise, between the right of self-representation and the right of a defendant to secure counsel of his own choice." *State v. Harris,* 384 *N.J.Super.* 29, 59 (App.Div.), *certif. denied,* 188 *N.J.* 357 (2006). "The latter is not absolute and cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice and deprive such courts of the exercise of their inherent powers to control the same." *Ibid. See also State v. Coon,* 314 *N.J.Super.* 426, 438 (App.Div.), *certif. denied,* 157 *N.J.* 543 (1998) ("The right to assigned counsel is not the right to pick an attorney of one's own choosing, nor the right to select counsel who will completely satisfy a defendant's fancy as to how he is to be represented.").
>
> Here, there was no violation of defendant's right to self-representation. Although he made a request to proceed pro se at the June 2009 conference, Patrick's follow-up motion sought only dismissal of his public defender and appointment of new counsel. He never again made a request to represent himself at any other proceeding. In the absence of an unequivocal request, the judge did not err by failing to hold a hearing on the issue.

*Muldrow*, 2013 WL 1296287, at *10-11.

Petitioner asserts that the Appellate Division unreasonably applied *Faretta* by ignoring

"the fact that the defendant need not 'recite some talismanic formula hoping to open the eyes and ears of the court to his request' to invoke his/or her Sixth Amendment rights." (ECF No. 1-2 at 29-30 (quoting *Buhl*, 233 F.3d 783). Furthermore, Petitioner contends that, "by mischaracterizing the evidence that contradicted it, the Appellate Division['s] overall finding as to the right to self-representation was unreasonable." (*Id.* at 30.) According to Petitioner, he unequivocally (and repeatedly) asked to represent himself at the June 2009 pre-trial conference, which triggered the trial court's obligation to order a *Faretta* hearing. (*Id.* at 21-30.)

Petitioner has failed to show that the Appellate Division applied a rule different from the governing law established by United States Supreme Court, or that it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell*, 535 U.S. at 694. As the United States Supreme Court recognized in *Faretta*, "Defendants have a Sixth Amendment right to represent themselves at trial," but "to exercise that right, they must invoke it 'clearly and unequivocally.'" *Barney*, 48 F.4th at 164 (quoting *Faretta*, 422 U.S. at 832. 835); *see also Muldrow*, 2013 WL 1296287, at *10. "The need for an *unequivocal* request for self-representation by a defendant is a necessary prerequisite to the determination that the defendant is making a knowing and intelligent waiver of the right to counsel." *Muldrow*, 2013 WL 1296287, at *10 (emphasis in original) (quoting *State v. Figueroa*, 186 N.J. at 593 n.1); *see also Buhl*, 233 F.3d at 792 (explaining that "clear and unequivocal request" requirement prevents defendants from making casual and ineffective requests to proceed *pro se* and then attempting to upset verdicts at which they were represented by counsel, also keeps defendants from proceeding *pro se* and then challenging any subsequent conviction by alleging a denial of the right of counsel, and guards against inadvertent counsel waivers based on mere musings).

Furthermore, Petitioner has not shown that the Appellate Division's ruling involved an

unreasonable application of *Faretta* or was based on an unreasonable determination of the facts. Taken together, the "unreasonable application" prong of AEDPA and the *Faretta* standard implicate a doubly deferential standard of review. As noted above, a defendant must invoke the right to self-representation clearly and unequivocally. *See Barney*, 48 F.4th at 164. "Given the general standard articulated in *Faretta*, 'a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.'" *Peoples v. Davids*, No. 19-0156, 2021 WL 1147188, at *6 (W.D. Mich. Jan. 22, 2021) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)), *R&R adopted by* 2021 WL 1146122 (W.D. Mich. Mar. 25, 2021).

Exercising this latitude, the Appellate Division acknowledged that Petitioner "made a request to proceed pro se at the June 2009 conference."[7] *Muldrow*, 2013 WL 1296287, at *11; *see also id.* at *9 ("During the course of the hearing, Patrick told the judge that he wanted 'to go pro se' because of complaints regarding defense counsel's performance.'"). The Appellate Division then reasonably determined that Petitioner ultimately failed to make an unequivocal request

---

[7] It is undisputed that, at the June 26, 2009 pre-trial conference, Petitioner made repeated requests to proceed *pro se*, *e.g.*: (1) "I put motions in, my lawyer won't do nothing, ineffective counsel. I want to go pro se." (ECF No. 8-2 at 7:3-5); (2) "So as for my attorney right there, he's not doing nothing for me. I want to go pro se." (*id.* at 12:22-23); (3) "I'd rather represent myself because he's not doing nothing." (*id.* at 13:10-11); and (4) "I'm the one that's got to do the time. You're not going to do it, he's not going do it. So I'm going to do it. So therefore, if I'm going to do it, then I think I should represent myself because he's not doing nothing." (*id.* at 17:3-9). Petitioner's trial counsel inquired, "will he be representing himself or will I be representing him," observed that Petitioner expressed a desire to represent himself, and stated that "[i]f that is the case and if he wishes to do that, I would ask the Court to conduct a Faretta motion" or hearing to determine his qualifications to represent himself. (*Id.* at 27:23-28:8.) The trial court told counsel that it was not going to hold a hearing at that specific time and indicated that Petitioner should put anything he wanted to raise in writing by September 1, 2009 and the trial court would then rule on the issues he raised. (*Id.* at 28:3-21.) The trial court then asked, "You're telling me, sir, that you want to present, proceed pro se," and Petitioner responded: "Your Honor, like I said before, I haven't gotten no representation from him, everything I had I put in myself, so therefore, yes." (*Id.* at 28:16-21.) Noting that "I'm just not at the position at a quarter to 5 to conduct a hearing at this point," the trial court instructed Petitioner that, "if you put it to me in writing, then I will schedule a hearing," and Petitioner indicated that he would comply with this directive. (*Id.* at 28:23-29:17.)

because his "follow-up motion sought only dismissal of his public defender and appointment of new counsel" and "[h]e never again made a request to represent himself at any other proceeding." *Id.* at *11.

Petitioner does not dispute that the trial court directed Petitioner to file a motion or letter asking to proceed *pro se* but, despite this directive and Petitioner's repeated written and oral attempts to obtain a new attorney, he never again mentioned the possibility of representing himself, whether orally or in writing. (*See* ECF No. 1-2 at 21-30.)

Specifically, the trial court did not deny, or refuse to accept or acknowledge, Petitioner's requests at the June 2009 pre-trial conference to proceed *pro se*. Instead, the trial court clearly explained to Petitioner that it was not prepared at that specific point in time to conduct a *Faretta* hearing to determine whether Petitioner knowingly and intelligently waived his constitutional right to counsel and invited Petitioner to submit a writing asking to proceed *pro se*, at which time the trial court would conduct the required hearing. (*See* ECF No. 8-2 at 27:21-29:17.) The trial court stated that "I'm not going to do that [a *Faretta* hearing] now," the "[p]oint is to the extent that Mr. Muldrow wants to follow through on that, and I assume he's probably going to write me a letter summarizing what he said today or possibly adding some new issues he wishes me to address, then I will obviously do that, but that will be by September 1." (*Id.* at 28:9-15.) After the trial court asked Petitioner whether he wanted to proceed *pro* se and Petitioner answered in the affirmative, Petitioner said, "[i]f you want a motion, you'll have it by September 1st," and he could send "the whole appeal I wrote already [and] we can address that at the same time." (*Id.* at 28:16-29:9.) The trial court instructed Petitioner that he did not have to file a formal motion, saying that he could instead send "a letter to me explaining why you want to represent yourself and any qual - -" and, "if you put it to me in writing, then I will schedule a hearing." (*Id.*). Petitioner indicated he

understood the trial court's instructions, stating that there was a chance he could submit the writing before the deadline. (*Id.* at 29:10-12.) The trial court ended the discussion of the *Faretta* issue by emphasizing that "I'm just not at the position at a quarter to 5 to conduct a hearing at this point." (*Id.* at 29:13-15.)

Subsequently, Petitioner filed a *pro se* motion entitled "A NOTICE OF MOTION FOR COUNSEL WITHDRAWAL AND REASSIGNMENT PURSUANT TO R. 1:11-2,(a)(2)," which was dated August 31, 2009 and received by the trial court on September 10, 2009. (ECF No. 11-2 at Ra-1.) In this writing, Petitioner did not either explicitly or implicitly ask to proceed *pro se.* On the contrary, in the supporting memorandum of law, Petitioner asserted that, "[w]ith the Proseuction against me, and my court appointed counsel not being truthful with me, I feel that I cannot adequately defend the allegations held against me" and "I am not [an] attorney duly admitted to practice law in the State of New Jersey." (*Id.* at Ra-2-Ra-3.) As the Appellate Division reasonably explained, "[t]he [trial] court received Patrick's pro se motion for 'counsel withdrawal and reassignment' dated August 31, 2009." *Muldrow*, 2013 WL 1296287, at *9. "In the accompanying memorandum, Patrick did not ask to represent himself *but, rather,* sought the assignment of another lawyer." *Id.* (emphasis added). On October 1, 2009, the trial court denied the motion for counsel withdrawal and reassignment. *See id.*

In subsequent proceedings before the trial court, although Petitioner continued to complain about his attorney, (unsuccessfully) requested a different attorney, and finally decided not to participate in the trial at all, he never, orally or in writing, expressed any interest in proceeding *pro se*. (*See* ECF No. 8-3 at 8:24-9:18; ECF No. 8-5 at 6-10); *Muldrow*, 2013 WL 1296287, at *9-10.

Considering the totality of the circumstances, it was objectively reasonable for the Appellate Division to conclude that Petitioner did not clearly and unequivocally ask to proceed

*pro se*. While Petitioner may have indicated an intent to proceed *pro se* at the pre-trial conference, Petitioner not only failed to file an informal letter or writing that he said he would file (and the trial court asked him to file because it was not prepared to conduct a *Faretta* hearing at the end of the day) but instead filed a motion affirmatively requesting a new attorney because "I feel that I cannot adequately defend the allegations held against me" and "I am not [an] attorney duly admitted to practice law in the State of New Jersey." It appears that, as Respondents aptly put it, Petitioner (at the very least) "equivocated" about whether he intended to represent himself, (*see* ECF No. 25 at 5), or, as the Appellate Division reasonably explained, "[i]n the absence of an *unequivocal* request [to proceed *pro se*], the judge did not err by failing to hold a hearing on the issue," *Muldrow*, 2013 WL 1296287, at *10 (emphasis added).

Furthermore, the case law cited by Petitioner does not establish that the Appellate Division's disposition of Petitioner's *Faretta* claim was either contrary to, or an unreasonable application of, United States Supreme Court precedent (or was based on an unreasonable factual determination). In *Buhl*, the Third Circuit stated that "[a] defendant need not 'recite some talismanic formula hoping to open the eyes and ears of the court to his request' to invoke his/her Sixth Amendment rights under *Faretta*." *Buhl*, 233 F.3d at 791 (quoting *Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986))). "Indeed, such a requirement would contradict the right it was designed to protect as a defendant's Sixth Amendment right of self-representation would then be conditioned upon his/her knowledge of the precise language needed to assert it." *Id.* Instead, "the law simply requires an affirmative, unequivocal, request, and does not require that request to be written or in the form of a formal motion filed with the court." *Id.* (citing *United States v. Leggett*, 162 F.3d 237, 249 (3d Cir. 1998)). According to *Buhl*, a defendant adequately asserts his constitutional right of self-representation if, "[o]n [the] record, 'no reasonable person can say that

a request [for self-representation] was not made.'" *Id.* (alterations in original) (quoting *Dorman*, 798 F.2d at 1366).

However, while 'decisions of federal courts below the level of the United States Supreme Court may be helpful to us in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent . . . [the Third Circuit] emphasize[s] that cases not decided by the Supreme Court do not serve as the legal benchmark against which to compare the state decision.'" *Barney v. D'Illio*, No. 15-0057, 2018 WL 2018054, at *8 (D.N.J. May 1, 2018) (alterations added) (quoting *Fischetti v. Johnson*, 384 F.3d 140, 149-50 (3d Cir. 2004)), *aff'd sub nom. Barney v. Adm'r of N.J. State Prisons*, 48 F.4th 162 (3d Cir. 2022). *Buhl* was "decided '[u]nder the pre-AEDPA standard' and did not give any deference, much less the significant deference that § 2254(d) now demands to [t]he state court's legal findings." *Brathwaite v. Phelps*, 418 F. App'x 142, 147 (3d Cir. 2011) (alterations in original) (quoting *Buhl*, 233 F.3d at 789). Accordingly, the Appellate Division was "under no obligation to follow *Buhl*." *Id.* at 147 n.3 (citing *Fischetti*, 384 F.3d at 147) (stating that *Buhl* was discussed because it was a precedential opinion binding the Third Circuit and the district court).

Like the Appellate Division, *see Muldrow*, 2013 WL 1296287, at *10, the *Buhl* court recognized that the defendant must "clearly and unequivocally" invoke his right to proceed *pro se*, *Buhl*, 233 F.3d at 790 (citing *Faretta*, 422 U.S. at 835); *see also Buhl*, 233 F.3d at 792 (stating *inter alia* that this requirement prevents defendants from making causal and ineffective requests to proceed *pro se* and then challenge adverse verdicts at which they were represented by counsel); *Muldrow*, 2013 WL 12969287, at *10 (noting that the requirement for an unequivocal request is a necessary prerequisite to ensure that the defendant is making a knowing and intelligent waiver of the constitutional right to counsel).

*Buhl* is also factually distinguishable. The district court in *Barney* noted that "it was 'undisputed that Buhl filed a *written* motion to proceed *pro se* . . . and it [wa] clear that the trial court understood that Buhl was asserting th[at] right because the court held a hearing on that motion a month later.'" *Barney*, 2018 WL 2018054, at *11 (alterations in original) (emphasis in original) (quoting *Buhl*, 233 F.3d at 792) Likewise, Barney stated in writing his intention to proceed *pro se*. *See Barney*, 48 F.4th at 164. In contrast, Petitioner orally asked to represent himself at a pre-trial conference, and, although the trial court instructed him to submit a writing to that effect (and he indicated that he would file a writing), he failed to do so and instead unsuccessfully sought the appointment of a new attorney without ever again mentioning the possibility of proceeding *pro se*. The Third Circuit in *Barney* further concluded that, under § 2254(d)(1), the state habeas court reasonably rejected the *Faretta* claim on timeliness grounds. *Barney*, 48 F.4th at 164 (indicating that, while it might agree with Barney that he clearly and unequivocally exercised his right to proceed *pro se* and that the PCR court's contrary reading of Barney's letter may have been unreasonable, the court need not decide that issue because Barney lost on the timeliness ground).

Furthermore, in *United States v. Robinson*, 844 F.3d 137 (3d Cir. 2016), *abrogation on other grounds recognized by United States v. Harris*, 88 F.4th 458 (3d Cir. 2023) (Jordan, J., concurring in denial of rehearing en banc), the defendant, after the district court had conducted a *Faretta* hearing during which the defendant notified the court that he had decided to retain counsel, announced at the end of a suppression hearing that he had a motion to file, which his counsel confirmed was a notice of an intent to proceed *pro se*, *id.* at 146. Subsequently:

> Rather than addressing Robinson's desire to proceed *pro se*, the Court requested that counsel file any relevant motion. Although Robinson's counsel informed the court that she would file the motion, no motion was filed. And the issue was not raised again after

> its brief mention at the end of Robinson's suppression hearing. Without a clear and unequivocal request to proceed *pro se*, a *Faretta* inquiry is not necessary. Thus, we hold that Robinson's right to self-representation was not abridged by the District Court's failure to conduct a second *Faretta* inquiry.

*Id.* at 146-47. The Third Circuit's ruling in *Robinson* supports the Appellate Division's determination in this proceeding. *See also Peoples*, 2021 WL 1147188, at *7 ("Moreover, the court explicitly advised Petitioner that, if he wished to represent himself, he should file a motion, which the court then would consider. Petitioner never filed such a motion and never demonstrated an intent to represent himself. Under these circumstances, Petitioner fails to show that the [state] court of appeals unreasonably applied established precedent in denying his motion.").

Respondents further argue that "even if this Court determines that Petitioner unequivocally asserted his right to proceed *pro* se, the filing of his motion for counsel of withdrawal and reassignment pursuant to R. 1:11-2(a)(2) clearly implicated his waiver of the issue as he specifically stated that he could not represent himself, and he requested a new attorney." (ECF No. 25 at 20). The Court agrees. The United States Supreme Court in *McKaskle v. Wiggins*, 465 U.S. 168 (1984), "suggested that after a defendant asserts his right to self-representation, he may waive that right without a specific colloquy with the trial court or similar formal procedure." *Brathwaite*, 418 F. App'x at 147. Even if Petitioner unequivocally asserted his right to self-representation in June 2009, the trial court refrained from ruling one way or the other on his request and explicitly invited him to file a written motion or letter asking to proceed *pro se*. Yet despite this invitation, and the fact that he demonstrated no reluctance on his part to complain about his counsel and to ask for a new attorney to be appointed, Petitioner never again mentioned any intention or possibility of representing himself, thereby waiving his right to self-representation.

Accordingly, because Petitioner has failed to meet his burden under § 2254(d), and, in any

event, waived his right to proceed *pro se*, the Court denies Ground Two.

### C. Ground Three: Trial *in Absentia*

Petitioner further asserts that "[t]he trial court erred by not ascertaining personally whether Defendant wanted to absent himself from the trial, relying instead on third-party representation, in violation of the Defendant's constitutional rights." (ECF No. 1-2 at 30 (emphasis omitted).) On direct appeal, the Appellate Division determined that this claim was waived under New Jersey state law and, in any event, lacked merit:

> Patrick also contends for the first time on appeal that the judge erred in trying him in absentia based upon representations by third parties that he did not wish to attend trial. This argument is procedurally barred because *Rule* 3:20–2 requires "[a] motion for a new trial based on a claim that the defendant did not waive his or her appearance for trial shall be made prior to sentencing." No such motion was made. "[T]he failure to make the appropriate motion before the trial court constitutes a second waiver pursuant to *Rule* 3:16(b)." *State v. Finklea,* 147 *N.J.* 211, 221 (1996), *cert. denied,* 522 *U.S.* 837, 118 *S.Ct.* 110, 139 *L. Ed.*2d 63 (2007).
>
> The argument is also unpersuasive on its merits. It is axiomatic that criminal defendants have a constitutional right to confront witnesses against them, *see* U.S. Const. amend. VI; *N.J. Const.* art. I, ¶ 10, and "[e]ssential to that guarantee is the right of the accused to be present in the courtroom at every stage of the trial." *State v. Luna,* 193 *N.J.* 202, 209 (2007). The right to be present at trial, however, is not absolute, *id.* at 210, and a defendant may waive his right to be present. *Hudson, supra,* 119 *N.J.* at 182.
>
> *Rule* 3:16(b) provides in relevant part:
>
>> Nothing in this Rule . . . shall prevent a defendant from waiving the right to be present at trial. A waiver may be found either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgment of the trial date, or (2) trial has commenced in defendant's presence.
>
> After a defendant has received actual notice of a scheduled trial date,

> absent a showing of justification, nonappearance is deemed a waiver of the right to be present at trial. *Finklea, supra,* 147 *N.J.* at 213, 218–22.
>
> Patrick repeatedly told the judge he did not wish to attend trial, i.e., he made an express oral waiver of his right to be present. Thereafter, the judge confirmed with members of the sheriff's staff and defense counsel that defendant's wish continued. There is nothing in the record supporting a contrary conclusion. Certainly, defendant was free to revoke his waiver, but never did. *See Luna, supra,* 193 *N.J.* at 211 ("A defendant can always reclaim the right to be present by appearing in court on the rescheduled date."). Indeed, defendant's failure to file a motion under *Rule* 3:20–2 implies his express waiver continued.

*Muldrow*, 2013 WL 1296287, at *11.

Petitioner asserts that the trial court's process was inadequate and contrary to clearly established federal law because he was not brought back into court and asked if he had reconsidered his intention not to appear at the trial. (ECF No. 1-2 at 30-32.) According to Petitioner, the trial court improperly relied on the representations of his defense counsel, "who admitted feeling threatened by the defendant and may not have been the most authentic interpreter of his client's wishes." (*Id.* at 32.) Petitioner states that the trial court should have conducted a more searching colloquy instead of following "what could well have been a moment of temporary anger on the part of the defendant," and should have asked him again "whether this moment had passed and whether Mr. Muldrow had changed his mind about waiving this critical right." (*Id.* at 33.)

Initially, "[t]his Court finds that the standards applied by the state court in reviewing the constitutionality of [Petitioner's] trial *in absentia* are substantially the same as the federal standard . . . regarding knowing and voluntary waiver of substantial constitutional rights" under § 2254(d)(1). *Cradle v. Brooks*, No. 02-2121, 2005 WL 1619670, at *7 (D.N.J. July 11, 2005). In short, the constitutional right under the Confrontation Clause of the Sixth Amendment and the Due

Process Clause of the Fifth and Fourteenth Amendments to be present at trial may be waived, but the defendant must voluntarily, knowingly, and intelligently waive this right. *See Illinois v. Allen*, 397 U.S. 337, 338 (1970); *Brady v. United States*, 397 U.S. 744, 748 (1970); *Diaz v. United States*, 223 U.S. 442, 455 (1912); *Cradle*, 2005 WL 1619670, at *7; *see also Muldrow*, 2013 WL 1296287, at *11 (stating that criminal defendants have the right under the United States and New Jersey Constitutions to confront witnesses against them, essential to this guarantee is the right to be present in the courtroom at every stage of the trial, and this right may be waived).

Additionally, the Appellate Division reasonably determined that Petitioner voluntarily, knowingly, and intelligently waived his right to be present at the trial, and, although free at any time to revoke his waiver, he never did. *Muldrow*, 2013 WL 1292687, at *11. Petitioner admits that, "[a]t the January 13, 2011 pre-trial conference, [he] told the judge, 'I'm not coming back down here tomorrow, so don't even call for me and that is on the record. I refuse trial because I am not getting a fair trial so have it without me.'" (ECF No. 1-2 at 30 (quoting ECF No. 8-5 at 10).) On January 26, 2010, on three separate days (of the six-day trial), defense counsel and/or a sheriff's officer told the trial court that Petitioner refused to appear. (*Id.* at 30-31 (citing ECF No. 9 at 3:16-20; ECF No. 9-3 at 20:18-21; ECF No. 10 at 20:18-12; ECF No. 10-1 at 6:16-23).) Petitioner has not alleged that either his attorney or the sheriff's officer misrepresented his consistent refusal to come down for trial or that he had changed his mind at any point during the trial.

Accordingly, because the Appellate Division's disposition was neither contrary to, nor involved an unreasonable application of Supreme Court precedent (nor was it based on an unreasonable factual determination),[8] the Court denies Ground Three.

---

[8] The Appellate Division also determined that Petitioner's claim was waived under the New Jersey Court Rules because he failed to move for a new trial on this ground prior to sentencing.

**D. Ground Four: Ineffective Assistance of Trial Counsel for Failing to Seek a *Franks* Hearing**

In Ground Four, Petitioner asserts that "trial counsel was ineffective for not seeking a *Franks* hearing prior to trial." (ECF No. 1-2 at 33 (emphasis omitted).)

The Appellate Division upheld the PCR court's denial of Petitioner's claim that his trial counsel provided ineffective assistance by not requesting a *Franks* hearing:

> The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland v. Washington, 466 U.S. 668 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987). In order to prevail on a claim of ineffective assistance of counsel, defendant must meet the two-prong test of establishing both that: (1) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.
>
> . . . .
>
> The decision whether to grant an evidentiary hearing in a suppression motion is reviewed for abuse of discretion. State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009). A Franks hearing "is aimed at [search] warrants obtained through intentional wrongdoing by law enforcement agents and requires a substantial preliminary showing . . . ." Id. at 240. A hearing is required only where a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." Franks, 438 U.S. at 155-56. The defendant "must allege 'deliberate falsehood or reckless disregard

---

*Muldrow*, 2013 WL 1296287, at *11. Because Petitioner's claim fails under 28 U.S.C. § 2254(d), the Court does not consider whether it has been procedurally defaulted or, if it has, whether Petitioner could show cause and prejudice or a miscarriage of justice to overcome the procedural bar. *See Ross v. Adm'r N.J. State Prison*, 118 F.4th 553, 565 (3d Cir. 2024) (discussing the procedural default doctrine); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (rejecting procedurally defaulted claim on the merits).

> for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." State v. Howery, 80 N.J. 563, 567-68 (1979) (quoting Franks, 438 U.S. at 171). A misstatement is material if, when excised, the warrant affidavit "no longer contains facts sufficient to establish probable cause" in its absence. Id. at 568 (citing Franks, 438 U.S. at 171). If, however, there still would be probable cause without this misinformation, the warrant is valid and an evidentiary hearing is not needed. See State v. Sheehan, 217 N.J. Super. 20, 25 (App. Div. 1987).
>
> We agree with the PCR court that defendant's proofs did not satisfy the standards necessary for post-conviction review. There was no proof of the required element under Franks of "intentional wrongdoing by law enforcement agents." Broom-Smith, 406 N.J. Super. at 240. The Pawlowski affidavit did not allege that Fox, the affiant, knew the information was false. A second Franks requirement also was missing. There was no showing the "allegedly false statement [was] necessary to the finding of probable cause . . . ." Franks, 438 U.S. at 156. There was no actual proof that Pawlowski was the CI. Even if he were, we agree with the PCR court that probable cause could be found from what Fox overheard on the calls and the surveillance at both the Clearstream and MLK properties. In fact, defendant was not charged with an offense from the controlled purchase through the CI. Therefore, defendant did not show proofs that qualified for a Franks hearing. Without proof of these prerequisites, counsels' performance cannot be considered to be ineffective assistance.

*Muldrow*, 2021 WL 706938, at *5-6 (further rejecting Petitioner's pro se arguments as without sufficient merit to warrant discussion in a written opinion).

According to Petitioner, the defense counsel was aware that Fox recklessly or intentionally made misstatements of material fact in his affidavit, and Petitioner further requested on the record that counsel move for a *Franks* hearing. (ECF No. 1-2 at 34.) Petitioner identifies the following alleged misstatements, misleading statements, and omissions: (1) Fox stated that the CI was a reliable confidential informant and suggested the details surrounding the informant's reliability would be set forth herein, but the affidavit did not provide any information indicating that the CI had proven to be reliable in previous investigations; (2) the affidavit provided no time frame or

other details regarding the CI's allegations that he previously purchased drugs from Petitioner at the Clearstream property; (3) it was averred that the CI told Fox that Petitioner was going to be making a trip to Georgia in the next few weeks to purchase a large quantity of drugs despite the fact that, "although the affidavit details at some length the drugs transactions which led Fox to conclude that [Petitioner] was a drug dealer," the only mention in the affidavit of guns being purchased by Petitioner was set forth in this statement: (4) Fox's statement that Petitioner's seven prior arrests made him eligible for an extended term and would vastly increase his sentencing exposure was intentionally misleading because the reader was left with the false impression that a mere arrest could increase the sentence; and (5) Fox failed to state that Petitioner actually lived at the Clearstream property, and it was not merely used as a stash house. (*Id.* at 34-36.)

The Appellate Division did not act contrary to, nor unreasonably apply clearly established federal law, nor did it unreasonably apply the facts in denying Petitioner's ineffectiveness claim. Its disposition was not "contrary to" clearly established federal law, *see* 28 U.S.C. § 2254(d)(1), because it applied the correct two-prong *Strickland* test for evaluating claims of ineffective assistance of counsel. *See e.g.*, *Muldrow*, 2021 WL 806938, at *5-6 (quoting *Strickland*, 466 U.S. at 694). Under *Strickland*, first, a petitioner must show that considering all the circumstances counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. Scrutiny of counsel's performance is highly deferential, and it is strongly presumed that counsel rendered adequate assistance. *See id.* at 689-90 (reviewing court must make every effort to eliminate effects of hindsight). Second, the petitioner must show prejudice, *i.e.*, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonably probability is "a probability sufficient to undermine confidence in the outcome." *Id.* (explaining that petitioner does not need to show that

counsel's actions more likely than not altered the outcome a substantial likelihood of a different result).

The Appellate Division properly noted that, to obtain a *Franks* hearing, the defendant must make a substantial preliminary showing that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause." *Muldrow*, 2021 WL 806938, at *5 (quoting *Franks*, 438 U.S. at 155-56). A misstatement is material if, when excised, the affidavit would no longer contain facts sufficient to establish probable cause. *See Franks*, 438 U.S. at 171-72; *Muldrow*, 2021 WL 806938, at *5. A hearing is unnecessary if there still would be probable cause without the misinformation. *See Franks*, 438 U.S. at 171-72; *Muldrow*, 2021 WL 806938, at *5.

Because Petitioner's ineffective assistance of counsel claim is raised through a § 2254 petition, federal habeas review must be "doubly deferential" to provide both the state court and defense counsel the requisite benefit of the doubt. *See Woods v. Donald*, 575 U.S. 312, 316-17 (2015) (citations omitted). Indeed, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Under these highly deferential standards, the Appellate Division reasonably determined that the materiality requirement for a *Franks* hearing was not satisfied because "probable cause could be found from what Fox overheard on the calls and the surveillance at both the Clearstream property." *Muldrow*, 2021 WL 806938, at *6. The Court has already explained how the surveillance adequately connected the Clearstream property with illicit drugs and Petitioner. *See*

*supra* section III.A. Any allegedly misleading statements regarding the CI's prior assistance with police investigations and his drug purchases, the legal significance of Petitioner's arrest record, and the Petitioner's residence at the property were immaterial. In fact, as to the CI's assertion regarding Petitioner's planned trip to Georgia to purchase weapons, it is undisputed that Petitioner subsequently repeated his statement that he was going to Georgia in a couple of days in a monitored phone conversation with the CI. (ECF No. 1-2 at 17; ECF No. 11 at 31a.) Fox also overheard the CI engage in a telephone conversation with Petitioner shortly after Petitioner left the Clearstream property in which Petitioner instructed the CI to meet him at the MLK property to make the drug purchase. (ECF No. 11 at 29a.) Petitioner was observed by police traveling directly from the Clearstream to the MLK property, where the transaction occurred. (*Id.* at 29a-30a.) In addition, Fox averred that Petitioner's seven prior arrests made him "extended term eligible" and would substantially increase his sentencing exposure as one of several grounds for the issuance of "No-Knock search warrant" (and not as a basis for the affiant's belief that there may be drugs, weapons, and other items on the property). (*Id.* at 36a.)

Accordingly, the Court denies Ground Four because it was reasonable under *Strickland* and *Franks* and AEDPA for the Appellate Division to conclude that "counsel's performance cannot be considered to be ineffective assistance."[9] *Muldrow*, 2021 WL 806938, at *6; *see also*

---

[9] Based on the parties' submissions and the exhibits submitted by the Respondents, it is not clear whether Petitioner has fairly presented Ground Four (based on such factual predicates as an allegedly misleading arrest history) to the state courts. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (stating that, to satisfy exhaustion requirement, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one full round of the state's established appellate process); *Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990) (stating that petitioner must provide state courts with the same legal theory and factual predicate underlying his federal claim). However, the Court finds that, under a *de novo* standard, his claim is without merit given the fact that probable cause was established based on the police surveillance of Petitioner and the property and the monitored phone calls. *See* 28 U.S.C. § 2254(b)(2) (stating that habeas application may be denied on the merits notwithstanding failure to exhaust available state court remedies).

*McBride v. Kuhn*, No. 22-2016, 2025 WL 1119479, at 5 (D.N.J. Apr. 14, 2025), *appeal filed*, No. 25-1934 (3d Cir. May 14, 2025) (stating that counsel cannot be ineffective for failing to raise a meritless issue).

**E. Petitioner's Motion to Amend**

On or about January 26, 2025, Petitioner filed a letter requesting leave to add a claim challenging his sentencing under *Erlinger v. United States*, 607 U.S. 821 (2024). (ECF No. 24.) According to Petitioner, on May 4, 2010, the trial court granted the prosecution's motion to impose a mandatory extended term as a persistent offender under N.J. Stat. Ann. § 2C:44-3a based on a "prior New York felony conviction." (*Id.* at 1.) Petitioner states that, "[a]fter my initial briefs were filed, the United States Supreme Court decided [*Erlinger*], holding that under the Fifth and Sixth Amendments, a jury—not a sentencing judge—must decide[ ] whether prior convictions used to establish the basis for enhanced sentencing ha[ve] been committed on separate occasions." (*Id.*) "As Petitioner's proposed [sentencing] claim is without merit, his proposed amendment is futile, and this Court denies his motion for leave to amend . . . as such." *Senat v. United States*, No. 18-13006, 2021 WL 2850471, at *5 (D.N.J. Jul. 7, 2021) (citing *George v. United States*, No. 17-2641, 2020 WL 2731166, at *14 (D.N.J. May 26, 2020)); *see also Cole v. Nogan*, No. 22-5557, 2026 WL 1045303, at *3 (D.N.J. Apr. 17, 2026) (stating that examples of futility in the habeas context include amendments lacking arguable merit).

*Erlinger* "concern[ed] the Armed Career Criminal Act (ACCA) [which imposes mandatory minimum prison terms for certain defendants who have committed three violent felonies or serious drug offenses on separate occasions] and the Fifth and Sixth Amendments." *Erlinger*, 602 U.S. at 825. The United States Supreme Court concluded that the two amendments require a unanimous jury to make the determination beyond a reasonable doubt that a defendant's past offenses were

committed on separate occasions (as opposed to a judge deciding whether the past offenses were committed on separate occasions using a preponderance-of-evidence standard). *Id.* at 825-49. Liberally construed, Petitioner asserts that he was sentenced on Count Two to an extended term of thirty years' imprisonment (with a fifteen-year parole bar) because the trial court found that he was a "persistent offender" under § 2C:44-3a based on prior felony convictions committed on separate occasions. (ECF No. 24 at 1.)

However, a review of the state court record shows that Petitioner was *not* sentenced as a persistent offender under § 2C:44-3a. Instead, the trial court imposed an extended term pursuant to N.J. Stat. Ann. § 2C:43-6f based on a single prior drug conviction in New York. Relying on the Certificate of Disposition of Indictment from the Supreme Court of the State of New York, the text of the New York statute of conviction, and the transcript of the New York Supreme Court plea colloquy, the trial court was "satisfied that the Prosecutor has established by a preponderance of the evidence that the defendant is extended term eligible by virtue of the New York conviction, which is the substantial equivalent of a violation of N.J.S.A. 2C:35-5." (ECF No. 10-4 at 9:17-11:4); *see also Muldrow*, 2013 WL 1296287, at *12 ("Prior to sentencing, the judge granted the State's motion for a mandatory extended term pursuant to *N.J.S.A.* 2C:43-6f based on Patrick's prior drug conviction in New York"). In *Erlinger*, the Supreme Court refrained from revisiting the narrow rule announced in *Almendarez-Torres v. United States*, 523 U.S. 224, 246-47 (1998), permitting a judge to find the fact of a prior conviction triggering enhanced penalties. *Erlinger*, 602 U.S. at 836-39 (stating that the judge may do no more than determine "what crime, with what elements, the defendant was convicted of" (citation omitted)).

For the foregoing reasons, the Court denies the Motion to Amend on futility grounds.

**F. Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Applying this standard, this Court finds that a certificate of appealability shall not issue in this case.

**IV. <u>CONCLUSION</u>**

For the foregoing reasons, Petitioner's Petition and Motion to Amend are denied. A certificate of appealability shall not issue. An appropriate Order will be entered.

DATED: September 30, 2026

Georgette Castner

**GEORGETTE CASTNER**
**United States District Judge**